UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MRS. GINA SHARBOWSKI,
individually and o/b/o T.S., a minor,
jointly and severally,

        Plaintiffs,

v.

UTICA COMMUNITY SCHOOLS,
*et al.*,

        Defendants.

_____/

Case No. 18-cv-10869

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING DEFENDANT UTICA COMMUNITY SCHOOL'S MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 14)

The Plaintiffs in this action, Ms. Gina Sharbowski and her minor son, T.S., have a long history with this Court. In two previous actions, this Court has afforded Ms. Sharbowski every possible opportunity to fully exhaust and present her claims that Defendant Utica Community Schools ("Utica") failed to provide T.S. with a free appropriate public education ("FAPE") as required under the Individuals With Disabilities Education Act ("IDEA"). 20 U.S.C. § 1412(a)(1)(A). This Court previously provided Ms. Sharbowski with very capable and diligent *pro bono* counsel, Mr. James Stewart of the Honigman Miller firm, and appointed a mediator very experienced in IDEA matters, Dr. Carla Harting, to assist in addressing the Plaintiffs'

1

grievances against Utica. The Court twice permitted Ms. Sharbowski to return to the administrative level, helping her to navigate that sometimes difficult procedural road, to present additional evidence and to have certain of her claims regarding the sufficiency of T.S.'s FAPE reconsidered in a due process hearing at that important administrative level. On December 15, 2017, in his most recent review of Plaintiffs' due process complaints, Administrative Law Judge ("ALJ") Christopher Saunders issued a decision, after a two-day rehearing on each of Plaintiffs' claims during which Ms. Sharbowski was permitted to present all of her evidence, finding in favor of Utica Community Schools on all claims and dismissing Plaintiffs' due process complaint.

Plaintiffs do not appeal any aspect of ALJ Saunders's December 15, 2017 decision. Rather, Ms. Sharbowski now files a third Complaint in this Court, captioned: "COMPLAINT Let's Fix This. Lets Do Something Monumental, That Will Help Students For Years To Come." (ECF No. 13, First Amended Complaint.)[1] The

_____

[1] The only difference between the original complaint and the Amended Complaint is the addition of paragraph 2, which lists a number of statutes, some of which are criminal, that Plaintiffs suggest support jurisdiction in this Court. The Court notes as a threshold matter that Plaintiffs' Amended Complaint does not recite the necessary elements of a claim under *any* of these sixteen statutes, let alone provide facts that plausibly suggest a claim under any of these of statutes. Ms. Sharbowski concedes in her Amended Complaint that she is "pretty much guessing" in providing this list of statutes. Sixth Circuit "precedent instructs that, for a complaint to survive [a motion to dismiss], it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 251 (6th Cir. 2018). Even

Complaint does not purport to appeal ALJ Saunders's December 15, 2017 decision, and in fact the Complaint never mentions the administrative decision that resulted from that due process hearing, does not challenge any aspect of the administrative ruling, and asserts instead a new issue never before raised by Ms. Sharbowski in any of her prior actions in this Court or at the administrative level, regarding wrongs allegedly committed by non-party Macomb Intermediate School District ("MISD") against T.S. before he reached the age three (3) and before he was enrolled at Utica. T.S. is currently sixteen (16) years old. Plaintiffs seek a host of remedies, including a monetary award between "$750,000-$7,500,000." (Am. Compl. PgID 125-26.) For the reasons that follow, the Court GRANTS the motion to dismiss.

## I.     BACKGROUND

The facts surrounding Ms. Sharbowski's grievances with Utica are set forth in numerous prior Opinions and Orders of this Court issued in two previous cases: *T.S. and Gina Sharbowski v. Utica Comm. Schools, et al.*, E.D. Mich. No. 11-13092 (*Sharbowski I*) and *T.S. and Gina Sharbowski v. Utica Comm. Schools, et al.*, E.D. Mich. No. 14-10216 (*Sharbowski II*). The Court thoroughly and most recently

_____

considering Ms. Sharbowski's *pro se* status, which in fact must be described as "seasoned," such a bare listing of statutory provisions, followed by a recitation of disconnected facts with no reference to any particular claim, cannot survive a motion to dismiss.

summarized this history in an Opinion and Order issued on January 20, 2017, in *Sharbowski II*. To save the reader the effort involved in cross-referencing that opinion, the background section will be largely repeated here.

On July 18, 2011, Plaintiffs Gina Sharbowski and her minor child T.S. filed *Sharbowski I*. Plaintiffs claimed in that previously-filed case that Utica had improperly addressed T.S.'s special education needs, denying him a FAPE and brought suit pursuant to the IDEA, the Americans With Disabilities Act (ADA), and the Family Educational Rights and Privacy Act of 1947 (FERPA). In that case, on April 18, 2012, this Court adopted the Report and Recommendation of Magistrate Judge, now District Judge, Laurie Michelson, recommending that Plaintiffs' case be dismissed without prejudice for failure to properly exhaust administrative remedies. (*Sharbowski I*, ECF No. 34, Order Adopting Report and Recommendation, ECF No. 32, Report and Recommendation.) In dismissing the case, the Court followed Magistrate Judge Michelson's recommendation to stay the two-year statute of limitations under 34 C.F.R. § 300.507 to permit Plaintiffs to re-file that case within 90 calendar days from the date of the decision of the ALJ in any future due process proceeding. (*Id*. at 9 n.4.) In granting the dismissal without prejudice, the Court denied Plaintiffs' request to stay the case rather than dismiss but did indicate that it would consider an application to proceed *in forma pauperis* at the time of any future

filing.  (*Id*. at 2 n. 2.)

Plaintiffs did not appeal the Court's dismissal of *Sharbowski I* and did proceed to administratively address their claims, which resulted in a decision in favor of the Plaintiffs issued by ALJ Susanne E. Harris on July 23, 2012.  The essence of Plaintiffs' claim was that T.S. should have been classified by Utica as eligible for special education as a student with Autism Spectrum Disorder (ASD), not as a student who was only Mildly Cognitively Impaired (MCI).  The ALJ (in a 45-page Opinion that was filed with this Court under seal in *Sharbowski II*, ECF No. 37-2) concluded that Utica had denied T.S. a FAPE, citing numerous failings on the part of Utica with regard to the "individualized education program" ("IEP") for T.S., and ordered Utica to adopt a host of remedial measures.  The ALJ issued several corrective action orders to the Defendant school district and required the school district to file proof of compliance with her Opinion and Orders.  On or about June 11, 2013, the MDE determined that Utica was in compliance with ALJ Harris's July 23, 2012 Order.

On March 11, 2013, almost eight months after receiving ALJ Harris's decision, the Plaintiffs filed, in the then-closed *Sharbowski I,* what was interpreted by then-Magistrate Judge Michelson as a Motion for Relief From Judgment in the previously-dismissed case, No. 11-13092.  (*Sharbowski I*, ECF No. 35, 3/11/2013 "Motion for Assistance from Higher Court to Address Ongoing Issues Post Due Process Hearing").

5

Plaintiffs complained that the Defendant school district had failed to comply with the ALJ's Decision and Order and stated that Plaintiffs needed the assistance of an attorney, that they did not understand the process, and that they did not believe they qualified for *in forma pauperis* status but nor could they afford to refile their case as instructed by this Court in its earlier dismissal of the case without prejudice.

Judge Michelson interpreted the motion as one for relief from judgment and recommended that this Court deny the motion because Plaintiffs in fact prevailed in the administrative proceeding and appeared to be challenging not the outcome of that proceeding but the school district's failure to implement the ALJ's Decision and Order. The Magistrate Judge noted that if Plaintiffs had been challenging the decision of the ALJ, their motion, which came 232 days after the ruling, was time-barred by the 90-day limitation period imposed by the Court in dismissing the case previously. (*Sharbowski I*, ECF No. 40, 9/9/13 Report and Recommendation at 7 n. 2.) The Magistrate Judge concluded that the remedy for Plaintiffs' challenge to the school district's non-compliance was to participate in the state complaint resolution procedure ("CRP") found in 34 C.F.R. § 300.151, *et seq.* (*Id.* at 7.) The Report and Recommendation outlined in great detail the process that Plaintiffs should follow to challenge the school district's alleged failure to implement the ALJ's Decision and Order. Over Plaintiffs' Objection (*Sharbowski I*, ECF No. 41, Objection), which

failed to cite any specific objection to the Report and Recommendation and largely complained that Plaintiffs needed the assistance of counsel, this Court adopted the Magistrate Judge's Report and Recommendation and denied the motion for relief from judgment on November 7, 2013. (*Sharbowski I*, ECF No. 42.) Again, Plaintiffs did not appeal this Court's ruling.

Plaintiffs *did not* challenge Utica's non-compliance through the CRP as directed by the Court in its Order adopting the Report and Recommendation and instead, on January 17, 2014, Plaintiffs proceeded directly to this Court and filed *Sharbowski II*. The original complaint in *Sharbowski II*, titled "Re-Filed Complaint," is a restatement of the claims asserted in *Sharbowski I*. In fact, in *Sharbowski II* Plaintiffs attached and incorporated the complaint from *Sharbowski I*. The original complaint in *Sharbowski II* expressed Plaintiffs' continued frustration with the process of administrative exhaustion and complained that Plaintiffs were adrift without the assistance of competent counsel, which they asserted they could not find or afford. This all despite the fact that then Magistrate Judge Michelson had given the Plaintiffs a detailed road map to challenging Utica's alleged noncompliance with ALJ Harris's Decision and Order through the state CRP procedure.

Recognizing that ALJ Harris's July 23, 2012 Decision and Order had noted certain failings on the part of Utica with respect to T.S.'s educational needs, and

despite the fact that Plaintiffs had not proceeded through the proper CRP channels as to their claims as instructed by the Court, this Court decided to appoint *pro bono* counsel for Plaintiffs with the hope that with the proper guidance, the Plaintiffs would be able to better understand what (if anything) remained of their claims and to see their way through whatever administrative exhaustion requirements might precede any further action in this Court. To their credit Utica and the other Defendants, despite their legally well-founded then-pending motions to dismiss, were in agreement that appointment of counsel for the Plaintiffs could help to move the case along to a fair and equitable resolution. On July 24, 2014, the Court assigned counsel, James E. Stewart of the Honigman, Miller firm, to represent Plaintiffs *pro bono* in that action. (*Sharbowski II*, ECF No. 23, Order of Assignment of Counsel.) The Court then directed the parties to participate in facilitation, under the guidance of Dr. Carla Harting, an expert in matters of special education, in an effort to resolve certain issues regarding the then-current educational placement of T.S. The parties met with Dr. Harting on two separate occasions and subsequently, at a status conference held before this Court on October 31, 2014, announced to the Court that they had reached a tentative agreement regarding the proper placement for T.S. for the current school year.

But no good deed goes unpunished and despite the parties' agreement on an

acceptable plan for T.S. for the then-current school year, Ms. Sharbowski was unwilling to agree to dismiss the claims in *Sharbowski II* against Utica and the MDE based upon that agreement because she was of the opinion that Utica should be ordered to bear the cost of a private educational placement for T.S. as compensation for the past wrongs committed by prior administrations that were acknowledged in ALJ Harris's July 23, 2012 Opinion. While ALJ Harris did conclude that Utica had denied T.S. a FAPE, she did not order private placement of T.S. at that time and this Court concluded that, particularly in view of a new due process complaint that Plaintiffs had filed on July 23, 2014, challenging T.S.'s 2013 and 2014 IEPs that was then-pending before ALJ Saunders in the Michigan Administrative Hearing System, that it was without jurisdiction to consider/order private placement for T.S. at that time. (*Sharbowski II*, ECF No. 31, Order Regarding Plaintiffs' Request for Private Placement of T.S.)

While Ms. Sharbowski proceeded with the administrative appeal of what remained of the July 23, 2014 due process complaint claims before ALJ Saunders, the Court addressed Utica's and MDE's long-pending motions to dismiss, as it appeared clear that the issues raised in the original complaint in *Sharbowski II,* which merely restated the allegations already rejected by the Court in *Sharbowski I*, were either time barred under the IDEA 2-year statute of limitations or the 90-day filing period

permitted under that statute, or had not been administratively exhausted, as explained in great detail by this Court in *Sharbowski I* and *Sharbowski II*.  In agreement with this conclusion, Plaintiffs' counsel stipulated on the record, at the April 9, 2015 hearing on the Defendants' motions to dismiss, to dismiss with prejudice all claims against the MDE and to dismiss as to Utica the claims as stated in the original complaint in *Sharbowski II*, preserving the right to appeal ALJ Saunders's dismissal of Plaintiffs' July 23, 2014 due process complaint against Utica.  Accordingly, the Court granted the MDE's motion to dismiss and dismissed MDE from the case, dismissed Plaintiffs' time-barred and unexhausted claims as stated in the original complaint in *Sharbowski II* against Utica, but denied Utica's motion to dismiss as against Utica those claims which had not been properly exhausted and were the subject of the July 23, 2014 due process complaint before ALJ Saunders.  The Court then stayed the matter against Utica to give Plaintiffs time to appeal ALJ Saunders's dismissal of Plaintiff's due process complaint, which ALJ Saunders by that time had issued on February 5, 2015, and permitted Plaintiffs to file an amended complaint against Utica that conformed to these rulings.  Plaintiffs, still under the *pro bono* guidance of Mr. Stewart, did file a conforming amended complaint on May 5, 2015, which set forth the sole administrative appeal that remained before the Court in *Sharbowski II*.

In the due process complaint that ultimately was the subject of the appeal to this Court in *Sharbowski II*, Plaintiffs had alleged 11 separate violations of the IDEA. In his August 27, 2014 Decision and Order, ALJ Saunders dismissed on jurisdictional grounds all but two of the 11 claims set forth in the due process complaint. In his February 5, 2015 Decision and Order, issued following a hearing and the presentation of evidence, ALJ Saunders dismissed the two remaining claims of Plaintiffs' due process complaint in response to Utica's motion for a directed verdict, finding it unnecessary to consider further evidence, and concluding that Plaintiffs failed to meet their evidentiary burden to establish by a preponderance of the evidence that the 2013 and 2014 IEP's failed to provide T.S. a FAPE. (*Sharbowski II*, ECF Nos. 37-4, 37-5, Amended Compl. Exs. 3, 4.)

This Court ultimately remanded the matter to ALJ Saunders in *Sharbowski II*, directing him to: (1) fully explain the statutory or other legal basis for concluding that nine of Plaintiffs' eleven claims were beyond the jurisdiction of his administrative review; and (2) permit Ms. Sharbowski the opportunity to organize and present at a second hearing the additional evidence that ALJ Saunders refused to consider on the first hearing date and to provide a more thorough rationale for his conclusions that would permit this Court to conduct a meaningful review should either party appeal his decision. The Court administratively closed *Sharbowski II* pending the outcome of

11

the administrative proceedings but ordered that the case could be reopened on the motion of either party at the conclusion of the administrative proceedings.

That history brings us to the present. In the new action now pending before this Court, Ms. Sharbowski indicates that Plaintiffs have "exhausted the required Due Process Hearing" and are filing their Complaint "within the 90-day time-frame appeal window." (Am. Compl. ¶ 4.) However, Plaintiffs are not appealing ALJ Saunders December 15, 2017 decision. As Ms. Sharbowski explained at the hearing on the motion to dismiss, she has now realized that everything she has ever complained of regarding the failure to provide T.S. with a FAPE stems from a failure thirteen years ago to appropriately identify and timely evaluate T.S. as required under the IDEA and Michigan's Early On program in T.S.'s pre-kindergarten years. Ms. Sharbowski confirmed at the hearing that in the many years that she has been seeking to hold various defendants, and principally Utica, accountable for the failure to provide T.S. a FAPE, including the time during which she had able counsel available to help her craft her claims, she has never mentioned these facts related to the wrongs allegedly committed thirteen years ago during T.S.'s pre-kindergarten years. Because this new "Early On" claim is unexhausted, and in any event is barred by doctrines of timeliness and laches, this action must be dismissed.

## II.    LEGAL STANDARDS

## A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* Where the defendant brings a factual attack on the subject matter jurisdiction, "no presumptive truthfulness applies to the allegations" of the complaint and the court may consider documentary evidence in conducting its review. *Id.* If the district court must weigh conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist, it "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

## B. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Sixth Circuit "precedent instructs that, for a complaint to survive such motions, it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 251 (6th Cir. 2018) (quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v.*

*City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

## III.   ANALYSIS

In this new action, Ms. Sharbowski is attempting to assert a new claim that she has never asserted before regarding a failure of the MISD (the Complaint also implicates Utica in this claim but it is undisputed that T.S. was not enrolled at Utica during this time frame) to timely identify and evaluate T.S. when he was three-years-old under Michigan's "Early On" program, which may have entitled T.S. to state services before he reached the age of three.  (Am. Compl. ¶¶ 12-23, 25-28, 32-36.) Michigan's "Early On" program "is Michigan's system for helping infants and toddlers, birth to age 3 and their families who have developmental delays or are at risk for delays due to certain health conditions. It's designed to help families find the social, health, and educational services that will promote the development of their infants and toddlers with special needs. Early On emphasizes early identification and early referral to enhance the development of infants and toddlers with disabilities, to minimize their potential for delay, and to recognize the significant brain development that occurs during a child's first three years of life." https://1800earlyon.org/about.php?ID=120 The Early On program is Michigan's enactment of the early intervention procedures that every state receiving federal funds is required to adopt pursuant to Part C of the IDEA.  "By way of background, Part C of the IDEA provides states with federal funding in exchange for developing early

intervention programs, such as the Early On program, which offer support services to children until the age of 36 months who have development delays or conditions which could result in delays." (ECF No. 14, Def.'s Mot. to Dismiss Am. Compl. 4, PgID 138) (citing 20 U.S.C. § 1431, *et seq.* and 34 C.F.R. 303.1, *et seq.*) Part C obligates school districts to reach out and affirmatively endeavor to locate, identify, and evaluate infants and toddlers who may suffer from development delays.

### A. Plaintiffs' "Early On" Claim is a New Claim Regarding the Failure to Provide a FAPE and Requires Exhaustion Under the IDEA

A plaintiff bringing a claim under *any* law must first exhaust administrative remedies as required under the IDEA "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry v. Napoleon Comm. Schools*, 137 S. Ct. 743, 755 (2017). The Supreme Court in *Fry* offered "a pair of hypothetical questions" that, when answered, could provide a "clue as to whether the gravamen of a complaint against a school concerns the denial of a FAPE." *Id.* at 756. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school – say, a public theater or library? And second, could an *adult* at the school – say an employee or visitor – have pressed essentially the same grievance?" *Id.* If the answer to both questions is "no," "then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement

is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.* Furthermore, the Supreme Court stated in *Fry* that "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff previously invoked the IDEA's formal procedures to handle the dispute – thus starting to exhaust the Act's remedies before switching midstream." *Id.* at 757.

This is exactly what has occurred here. Plaintiffs' claims have *always and exclusively* been about the denial of a FAPE for T.S. Now that Ms. Sharbowski has failed to obtain what she deems a favorable outcome under the IDEA on her claims that T.S. was denied a FAPE, she advances a new theory (based on facts known to her since T.S. was three) that T.S. was actually denied a FAPE due to certain violations of Michigan's Early On program. "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Fry*, 137 S. Ct. at 757. Plaintiffs did not appeal the Decision and Order issued by ALJ Saunders on December 15, 2017, and their newly-asserted "Early On" claim – which could not have been brought by an adult and could not be asserted against a public facility that was not a school – unquestionably presents a claim that concerns the

provision of a FAPE under *Fry* and requires exhaustion under the IDEA.

There are two exceptions to the exhaustion requirement, neither of which is claimed here: "Exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights. Nor is exhaustion required if the plaintiffs were not given full notice of their procedural rights under the IDEA." *Covington v. Knox County School Sys.*, 205 F.3d 912, 917 (6th Cir. 2000) (internal citations and quotation marks omitted). "The burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures." *Id.* Plaintiffs' Amended Complaint does not plead, and Plaintiffs have not argued, that any exception to the exhaustion requirement applies to Plaintiffs' Early On claim. The exceptions to the exhaustion requirement have been applied narrowly by the Sixth Circuit and the burden placed on the plaintiff to avoid exhaustion. *F.C. v. Tenn. Dept of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018) (noting that "[t]here are narrow exceptions to the exhaustion requirement" and that plaintiff bears the burden of establishing that one of them applies, and finding no exception to exhaustion in that case) (citing *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000) and *Honig v. Doe*, 484 U.S. 305, 326 (1988)). Plaintiffs do not allege any facts suggesting that such an exception applies to their claim that T.S. was denied a FAPE through an alleged failure to identify and timely evaluate him under the Early On program. *See W.R. v. Ohio Health Dept*, 651

F. App'x 514 (6th Cir. 2016) (finding that the IDEA's exhaustion requirement applied to plaintiffs' Part C claim, which involved denial of a FAPE, and finding that no exception applied).

Plaintiffs' new action alleges a never-before-asserted claim regarding an alleged failure to provide T.S. a FAPE 13 years ago by failing to timely identify and evaluate him before the age of three as required under the IDEA and Michigan's Early On program. That claim, even if it were not otherwise barred by the delay in asserting it as discussed *infra*, would require exhaustion under the IDEA. Plaintiffs never asserted, and therefore never exhausted, a claim that T.S. was denied a FAPE due to a failure to identify and evaluate him under the Early On program. Plaintiffs' Amended Complaint, asserting a new Early On claim that has never been exhausted, is DISMISSED.[2]

---

[2] The Sixth Circuit has acknowledged that there is a split of authority concerning whether a failure to exhaust under the IDEA should be analyzed under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), but has declined to take an affirmative position on that split. *See Gibson v. Forest Hills Local School Dist. Bd. of Educ.*, 655 F. App'x 423, 430-31 (6th Cir. 2016) (observing authority suggesting that "[n]ot all [prefiling] prescriptions . . . are jurisdictional," and observing that the Sixth Circuit "ha[s] lately broken with our own precedent and implied that the IDEA's exhaustion requirement is not jurisdictional in nature," but finding it unnecessary to "clarify which side of the split we are on") (internal quotation marks and citations omitted). In this case, this Court would reach the same result whether it applied the standard demanded under Rule 12(b)(1) or that required under Rule 12(b)(6), as "the parties do not dispute the . . . exhaustion-related fact[s]." *Id*. at 432. Ms. Sharbowski conceded at the hearing on the motion, and never asserted otherwise in her briefs or complaint, that she has never

### B. Plaintiffs' Thirteen-Year-Old Claim Regarding the Early On Program Must Be Dismissed for the Separate and Independent Reason That The Claim Is Barred by the IDEA Statute of Limitations and the Doctrine of Laches

T.S. is now 16 years old and the wrongs of which Plaintiffs complain regarding the Early On program happened (if they did) over 13 years ago and are charged to a non-party, MISD. Ms. Sharbowski alleges that when T.S. began regressing before the age of 3, she was informed by doctors and family members that there were programs that could help him and Ms. Sharbowski immediately contacted the MISD office regarding a pre-school evaluation for T.S. Ms. Sharbowski claims that an appointment was scheduled and cancelled by the MISD and not rescheduled before T.S. reached the age of 3, thus allegedly depriving him of the benefits of the Early On program. (Am. Compl. ¶¶ 11-13.) Despite the fact that Ms. Sharbowski has alleged every conceivable failing related to the provision of a FAPE for T.S. over the past near-decade, she has never referenced these facts or this alleged failing.

Utica argues persuasively that Plaintiffs' new claim regarding the failure to identify T.S. before the age of the three and to evaluate him as required under the IDEA is a claim that Ms. Sharbowski should have known about at the time she filed her original claims in *Sharbowski I*, or certainly during the time in *Sharbowski II*

_____

raised the Early On issue before now, either in administrative or judicial proceedings.

when she was represented by counsel. *See* 20 U.S.C. § 1415(b)(6)(B) (providing that state procedures must provide an opportunity for "a parent to present a complaint . . . which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint"); 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint . . . ."). *See Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 732 (W.D. Mich. 2014) (observing that "an IDEA claim accrues on the date that a plaintiff or his parent knew or should have known about the alleged action that forms the basis of the complaint" and holding that equitable tolling of the IDEA statute of limitations is not available, noting that "permitting equitable tolling of the IDEA's limitations period would hamper the Act's primary purpose of promoting the prompt presentation and resolution of disputes") (internal quotation marks and citations omitted).

Ms. Sharbowski (a process server by profession) continues to claim ignorance of the law and of the procedures she must follow in pursuing her grievances. But this Court's direct observation of Ms. Sharbowski's diligent pursuit of Plaintiffs' legal rights over these past eight years reveals that she understands those rights very well and she knows how to pursue them. Under the IDEA, Ms. Sharbowski had two years

from the time that MISD allegedly cancelled T.S.'s evaluation, when she knew or should have known of her "Early On" claim, to assert that claim under the IDEA. 20 U.S.C. § 1415(f)(3)(C) and 20 U.S.C. § 1415(b)(6)(B). She did not do so in that two year period and she apparently did not think it important enough to bring up during the nearly ten years that she has been successfully invoking the due process hearing procedures and pursuing her grievances (with the benefit of *pro bono* counsel) against Utica and the MDE. *Nothing* in any of Plaintiffs' previous filings concerns an alleged failure (on the part of non-party MISD) to identify and provide services to T.S. in his pre-school years under the Michigan Early On program. These claims are barred by the IDEA statute of limitations.

Plaintiffs' claims regarding the Early On program are also barred by the doctrine of laches. Laches is an affirmative defense that is asserted based upon "a negligent and unintentional failure to protect one's rights." *Iverson Indus., Inc. v. Metal Mgt. Ohio, Inc.*, 525 F. Supp. 2d 911, 920 (E.D. Mich. 2007) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id*. (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). Ms. Sharbowski alleges in her Amended Complaint that she "now knows" that the

program was the federally funded Early On program and that she was unaware at the time that she had the right to a due process hearing regarding the missed opportunity for T.S. (Am. Compl. ¶¶ 15, 17.) But most certainly during the course of her nearly decade-long quest for a FAPE for T.S., Ms. Sharbowski became aware of her right to a due process hearing for such violations and for whatever reason, but minimally through her own negligence, never included the fact of this missed opportunity among her many grievances.

Allowing Ms. Sharbowski to assert this claim now would result in significant prejudice to Utica who (1) was not even the entity alleged to have wronged her on her Early On claim, and (2) could not possibly recreate the circumstances of the missed or cancelled appointment, or the alleged failures to inform her of her right to a due process hearing, all of which occurred over 13 years ago, so that it could defend against the claim. *See Finnerty v. RadioSchack Corp.*, 390 F. App'x 520, 524 (6th Cir. 2010) (unpublished) ("'The party asserting a laches defense may be prejudiced . . . because the delay makes it difficult to garner evidence to vindicate his or her own rights.'") (quoting *Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 424 (2d Cir. 1992)).

## IV.   CONCLUSION

Plaintiffs have not appealed ALJ Saunders's December 15, 2017 decision ruling

in favor of Utica and dismissing Plaintiffs' due process complaint. Rather, the Amended Complaint asserts a new claim based on conduct that is alleged to have occurred thirteen years ago and is chargeable to a non-party to this action. Because the Early On claim concerns the provision of a FAPE to T.S., it requires exhaustion under the IDEA and must be dismissed. Plaintiffs' Amended Complaint must also be dismissed on the separate and independent ground of a profound lack of timeliness.

Accordingly, the Court GRANTS the Defendant's Motion to Dismiss the Amended Complaint.

IT IS SO ORDERED.

s/Paul D. Borman       
Paul D. Borman
United States District Judge

Dated: February 13, 2019